IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA
CIRCUIT CIVIL

CHRIS CASSADY,

        **Plaintiff,**

v.

                                                   **CASE NO.: 4:14-cv-00213-RH**

FLORIDA DEPARTMENT OF
FINANCIAL SERVICES and
FLORIDA OFFICE OF INSURANCE
REGULATION,

        **Defendants.**
_____/

## AMENDED COMPLAINT

Plaintiff, CHRIS CASSADY, amends his complaint and sues Defendants, FLORIDA DEPARTMENT OF FINANCIAL SERVICES and FLORIDA OFFICE OF INSURANCE REGULATION, and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $15,000.00.

2. Venue lies within Leon County because that is where Defendants maintain its headquarters and because a substantial part of the events giving rise to this claim arose in this County.

### ADMINISTRATIVE PREREQUISITES

3. All conditions precedent to bringing this action have occurred.

### PARTIES

4. Plaintiff, CHRIS CASSADY ("Cassady"), was a resident of Leon County, Florida

at the time of the events at issue.

5. Defendants, FLORIDA DEPARTMENT OF FINANCIAL SERVICES ("DFS") and FLORIDA OFFICE OF INSURANCE REGULATION (OIR), are state agencies and are headquartered within Leon County.

6. OIR was Cassady's employer per se.

7. DFS acted as an agent of OIR within the meaning of § 760.02(7), Florida Statutes; within the meaning of 42 U.S.C. § 12111(5)(A), as incorporated by 29 U.S.C. § 794(b)(1)(B) and (d); within the meaning of § 112.3187(3)(a), Florida Statutes; and within the meaning of § 20.121(3)(e), Florida Statutes.

8. OIR's annual report for 2013 acknowledges the personnel role of DFS as follows: "With respect to the Office's interaction with DFS in matters involving administrative support, the Office has inherited the responsibility to directly manage its personnel matters – i.e., to recruit, advertise, and hire personnel – subject to DFS personnel office review for compliance with required state agency hiring and personnel policies and procedures."

9. OIR has admitted that at least one decision integral to Cassady's termination was taken by DFS on its own authority, outside the scope of OIR's authority.

## STATEMENT OF FACTS

10. Cassady worked for the Office of Insurance Regulation ("OIR"), a unit within DFS, for approximately sixteen years as an Insurance Analyst.

11. On March 19, 2012, he was severely injured in an auto accident.

12. Cassady was forced to take four months of Family Medical Leave in order to recover from his injuries.

13. Cassady was able to use all paid leave time during the time he was out; he did not use any leave without pay.

14. When Cassady returned to work on July 11, 2012, he had no problem performing his job duties.

15. In the time he had been out on medical leave OIR had hired Suzetta Furlong as the Division Director.

16. Furlong gave Cassady a performance review on July 12, 2012, after he had been out of the office for four months and had just returned the day prior.

17. In this performance review, Furlong wrote that Cassady may not be eligible for leave without pay.

18. The performance review said nothing about using the sick pool time for which Cassady was an eligible member.

19. Furlong had assumed that Cassady's leave from March to July included leave without pay. However, this was a false assumption, as Cassady did not take any leave without pay during his months out recovering from the accident.

20. The performance review also stated the he had "fewer than four days of leave left."

21. Furlong made disparaging comments about Cassady's health. She told him that he was "not allowed to get sick."

22. Furlong also on many occasions asked Cassady if he was sleeping, even though he was doing nothing of the sort.

23. Furlong made repeated rude comments to Cassady about his health, even though he was able to do his job as fully and completely as before the accident.

24. Cassady required a non-elective hernia surgery and so relied on the information from his July performance review stating that he had a little less than four days left of leave.

25. Cassady further scheduled the surgery over the Thanksgiving holiday in order to benefit from the extra two days off.

26. Cassady had some complications from the surgery that he could not have predicted.

27. On November 29, 2012, Cassady made a request to participate in the Sick Leave Transfer Plan because by then he had exhausted all of his leave.

28. Nicole Cain (Management Analyst) denied Cassady's request to participate in the Sick Leave Transfer Plan because of the July 12, 2012 review that Furlong placed in his file regarding leave without pay.

29. Under the rules, an employee is banned from using the Sick Leave Transfer Plan if he/she has had any discipline related to time and attendance within the last twelve months.

30. Furlong has previously stated under oath that the comments in Cassady's evaluation were not discipline; it was not until OIR was attempting to fire Cassady that they decided it was actually discipline.

31. Cassady wrote a letter to Audrey Brown, Chief of Staff, OIR on December 3, 2012, explaining that he had wrongly been denied participation in the Sick Leave Transfer Plan. He explained that the July 12, 2012, review was factually incorrect

      and that he should not be discriminated against due to his disabilities from his auto accident as other employees were allowed to participate in the Sick Leave Transfer Plan.

32. On December 3, 2012, after hand delivering his letter to Brown, he received a letter indicating that he was going to be terminated effective December 14, 2012.

33. The termination letter cited the reasons for Cassady's termination as poor performance and mentioned the leave issue. The letter also states that OIR found a letter to a client that Cassady had written that had many errors. However, this was a draft of the letter and Cassady was able to prove that this was not the version that he sent out.

34. The Office of the Inspector General did an investigation and found that the State was confused on the hours remaining in Cassady's Family Medical Leave and it took until the IG did its investigation in 2013 for OIR and DFS even to attempt to sort out what happened with Cassady's leave time. They did find that the miscalculations were state error and that while they had informed Cassady that he had almost four days of leave remaining, he actually did not have any.

35. The OIR still has not sorted out exactly when the leave without pay actually started. There are conflicting dates indicated by the termination letter and the OIR Office of Inspector General Investigation.

36. Cassady was approved to take three days leave for his surgery and could not have had knowledge that the Defendants would retroactively change the leave time he had available.

37. Cassady also should have been eligible for the Sick Leave Transfer Plan and had no prior knowledge that he would not be as his performance review only stated that he was not eligible for leave without pay.

38. Cassady had never had performance issues in his job as an Insurance Analyst.

39. Cassady received positive evaluations in his sixteen years in the position.

40. Furlong approached Cassady with a negative attitude because he had been out of the office due to the accident; she was unjustifiably critical and intent on removing him from his position due to the use of his approved leave time.

41. Plaintiff has found it necessary to retain counsel to vindicate his rights in this matter.

### COUNT I- §112.31895(1)(a) FLA. STAT.
### FLORIDA PUBLIC WHISTLEBLOWER ACT
### RETALIATION

42. Plaintiff realleges Paragraphs 1 through 41.

43. The foregoing actions of Defendants constitute retaliation against Plaintiff in violation of the Florida Public Whistleblower Act, §112.31895(1)(a), Fla.Stat.

44. Plaintiff objected to and refused to participate in practices, which are in violation of laws, rules, and regulations.

45. Plaintiff objected to being denied access to the Sick Leave Transfer Plan based on his disability.

46. Defendants terminated Plaintiff in retaliation for complaining about unlawful policies and practices.

47. Plaintiff has suffered damages because of the Defendants' actions.

## COUNT II--29 U.S.C. § 701
## FEDERAL REHABILITATION ACT-SECTION 504

48. Plaintiff realleges Paragraphs 1 through 41.

49. The forgoing actions of Defendants constitute discrimination against Plaintiff in violation of the Federal Rehabilitation Act, 29 U.S.C. §701.

50. Plaintiff was discriminated against and terminated from his employment based solely on his disability.

51. Plaintiff has suffered damages because of Defendants' actions.

## COUNT III--29 U.S.C. § 701
## FEDERAL REHABILITATION ACT-SECTION 504
## RETALIATION

52. Plaintiff realleges Paragraphs 1 through 41.

53. The forgoing actions of Defendants constitute retaliation against Plaintiff in violation of the Federal Rehabilitation Act, 29 U.S.C. §701.

54. Plaintiff objected to and refused to participate in practices, which are in violation of laws, rules, and regulations.

55. Plaintiff objected to being denied access to the Sick Leave Transfer Plan based on his disability.

56. Defendants terminated Plaintiff in retaliation for complaining about unlawful policies and practices.

57. Plaintiff has suffered damages because of the Defendants' actions.

### COUNT IV--FLORIDA CIVIL RIGHTS ACT OF 1992
### CHAPTER 760, FLORIDA STATUTES
### DISABILITY DISCRIMINATION

58. The Plaintiff realleges Paragraphs 1 through 41.

59. The foregoing actions of Defendants constitute discrimination against Plaintiff based upon his disability in violation of the Florida Civil Rights Act of 1992, §§ 760.01-760.11, Fla.Stat.

60. Plaintiff is a qualified person with a disability, was perceived as having a disability, or had a record of a disability, and is therefore a member of a protected class within the meaning of applicable law.

61. The disparate treatment and discrimination described herein was based on Plaintiff's actual, perceived, or record of disability and negatively affected the terms, conditions, and privileges of his employment.

62. Plaintiff has suffered damages because of Defendants' actions.

### COUNT V
### FLORIDA CIVIL RIGHTS ACT OF 1992
### CHAPTER 760, FLORIDA STATUTES
### RETALIATION

63. The Plaintiff realleges Paragraphs 1 through 41.

64. The foregoing actions of Defendants constitute retaliation against Plaintiff in violation of the Florida Civil Rights Act of 1992, §§ 760.01-760.11, Fla.Stat.

65. Plaintiff engaged in protected activity and is therefore a member of a protected class within the meaning of applicable law.

66. The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose disability discrimination and to participate

      in actions calculated to redress these grievances.

67. Plaintiff has suffered damages because of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this Court take jurisdiction over this case;

(b) judgment against Defendants and for Plaintiff awarding compensatory damages for the Defendants' violations of law enumerated herein;

(c) judgment against Defendants and for Plaintiff, affording declaratory relief, and permanently enjoining Defendants from future violations of law enumerated herein and reinstatement for the Plaintiff, remedying all benefits of which Plaintiff has been unlawfully deprived;

(d) prejudgment interest;

(e) judgment against Defendants and for Plaintiff awarding Plaintiff his attorneys' fees and costs;

(f) all equitable relief that is allowed by law;

(g) such other and further relief as is appropriate.

## Jury Demand

Plaintiff demands trial by jury on all issues so triable.

Dated this 23rd day of May 2014.

*/s/ Melissa Horwitz*
Melissa Horwitz, Bar No 017333
Richard E. Johnson, Bar No 858323
LAW OFFICE OF RICHARD E. JOHNSON
314 West Jefferson Street
Tallahassee, Florida 32301
Telephone: (850) 425-1997
Facsimile: (850) 561-0836

Case 4:14-cv-00213-RH-CAS   Document 9   Filed 05/23/14   Page 10 of 10